UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CHRISTOPHER KENT,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No.: 3:14-cv-285

Magistrate Judge Michael J. Newman
(Consent Case)

---

**DECISION AND ENTRY: (1) AFFIRMING THE ALJ'S NON-DISABILITY FINDING AS SUPPORTED BY SUBSTANTIAL EVIDENCE; AND (2) TERMINATING THIS CASE ON THE DOCKET**

---

This Social Security disability benefits appeal is presently before the undersigned for disposition based upon the parties' consent. Doc. 5. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[1]  This case is before the Court upon Plaintiff's Statement of Errors (doc. 9), the Commissioner's memorandum in opposition (doc. 10), Plaintiff's reply (doc. 11), the administrative record (doc. 8),[2] and the record as a whole.

---

[1] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Decision and Entry to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

A.    **Procedural History**

Plaintiff filed for DIB and SSI alleging a disability onset date of April 1, 2007.  PageID 215-27.  Plaintiff claims disability as a result of a number of impairments including, *inter alia*, mild mental retardation ("MMR") and an anxiety disorder.  PageID 64.

After initial denial of his applications, Plaintiff received a hearing before ALJ Curt Marceille on October 5, 2012.  PageID 82-109.  The ALJ issued a written decision thereafter finding Plaintiff not disabled.  PageID 62-74.  Specifically, the ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

2. The claimant did not engage in substantial gainful activity after April 1, 2007, the alleged onset date.  20 CFR 404.1571 *et seq.*; 20 CFR 416.971 *et seq.*

3. The claimant exhibits the signs and symptoms of [MMR] and an unspecified anxiety disorder.  These "severe" impairments continue to cause more than a minimal limitation in the claimant's ability to perform a full range of basic mental work activities.  20 CFR 404.1520(c); 20 CFR 416.920(c).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

5. After careful consideration of the entire record, I find that the claimant retains the residual functional capacity ["RFC"] to perform work at all exertion levels.  He retains the mental capacity to understand, remember, and carry out simple, routine, repetitive instructions on a sustained basis.  Owing to his subjective feelings of anxiety, the claimant should not be required to interact with the public or to work in tandem with coworkers.  He should not be required to work in large groups.  He would work best in a "static" work setting with few changes and no fast pace[d] production demands.  He is able to engage in occasional decisionmaking.

6.     The claimant has no past relevant work. 20 CFR 404.1565; 416.965.

7.     The claimant was born [in] 1982 and was 24 years old (a younger individual age 18-49) on the alleged disability onset date. 20 CFR 404.1563 and 416.963.

8.     The claimant has at least a high school education and is able to communicate in English. 20 CFR 404.1564 and 416.964.

9.     Transferability of job skills is not an issue because the claimant does not have past relevant work. 20 CFR 404.1568; 20 CFR 416.968.

10.     Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform. 20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2007, through the date of this decision. 20 CFR 404.1520(g); 20 CFR 416.920(g).

PageID 64-73 (internal citations omitted).

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 50-52. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

**B. Evidence of Record**

In his decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 63-72. Plaintiff, in his Statement of Errors, sets forth a detailed summary of the record evidence. Doc. 9 at PageID 433-40. The Commissioner, in response, defers to the ALJ's recitation of the relevant evidence and Plaintiff's statement of facts. Doc. 10 at PageID

453. Except as otherwise noted in this Decision and Entry, the undersigned incorporates Plaintiff's summary and the ALJ's recitation of the evidence.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

B. **"Disability" Defined**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In his Statement of Errors, Plaintiff argues that the ALJ erred: (1) in his analysis of Listing § 12.05; (2) in weighing the opinions of consultative examiners Gordon Harris, Ph.D. and Stephen W. Halmi, Psy.D.; and (3) at Step Five of the sequential benefits analysis. Doc. 9 at PageID 442. Having reviewed the administrative record and the parties' briefs, and also having carefully considered the ALJ's decision, the Court finds that the ALJ carefully reviewed the record and appropriately assessed the evidence, reasonably concluded that Plaintiff's impairments do not meet or equal Listing § 12.05, and satisfied his burden at Step Five. The Court, therefore, finds the ALJ's analysis supported by substantial evidence, and affirms the ALJ's non-disability finding.

**A.  Listing § 12.05(C)**

Plaintiff first argues that the ALJ erred at Step Three of the sequential benefits analysis in concluding that his impairments do not meet or medically equal Listing § 12.05(C). Doc. 9 at PageID 442-47.

The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations omitted). "Because satisfying the [L]istings yields an automatic determination of disability . . . the evidentiary standards [at Step Three] . . . are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). Plaintiff has the burden of proving that he or she meets or equals all of the criteria of a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).

>Listing § 12.05 provides in relevant part:
>
>12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements of A, B, C, or D are satisfied.
>. . .
>
>>(C)   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. In other words, for a claimant to meet Listing § 12.05, he or she must meet the criteria under subsection A, B, C, or D, as well as "satisfy the diagnostic description" in the introductory paragraph, *i.e.*, "(1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009) (internal citations omitted).

"The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills." *Id.* at 677 (internal citation omitted). Although Listing § 12.05 does not define "adaptive functioning," another portion of the Listings defines "adaptive activities" as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1). The plain language of the Listing also does not identify how severe limitations must be to qualify as "deficits in adaptive functioning." *Pendleton v. Comm'r of Soc. Sec.*, No. 1:10-cv-650, 2011 WL 7070519, at *11 (S.D. Ohio Dec. 23, 2011). Nevertheless, case law from the Sixth Circuit and other federal courts suggests that a claimant must have relatively significant

7

deficits to satisfy the Listing. *See Farnsworth v. Comm'r of Soc. Sec.*, No. 2:13-cv-923, 2015 WL 1476458, at *9 (S.D. Ohio Mar. 31, 2015) (collecting cases).

> Here, with regard to Listing § 12.05(C), the ALJ found that:
>
> [e]ven though his Full Scale IQ does not exceed 70, the claimant's "mild" mental retardation fails to cause deficits in adaptive functioning of sufficient severity to meet paragraph C. In reaching this conclusion, I acknowledge that the claimant did not report SGA earnings even in an unskilled position at any time after his eighteenth birthday. As discussed in detail below, however, the claimant's subaverage intelligence did not lead to his decision to quit high school. He continues to live by himself and to enjoy a healthy relationship with his mother, children, and fiancé. He is able to care for his personal hygiene needs, to count change, to prepare simple meals for himself, to do household chores, to mow his lawn regularly, and to play videogames. In assessing the applicability of Listing [§] 12.05, I give little weight to the contrary opinions of the examiner asked to meet with the claimant by his attorney after the hearing. This nontreating source did not review all of the function reports. He did not hear the claimant's testimony. He chose to depend on the *tendencies* of individuals with *similar profiles* to the claimant.

PageID 65 (emphasis in original).

Substantial evidence supports the ALJ's Listing analysis. Although Plaintiff arguably satisfied the criteria under subsection C -- with a Full Scale Intelligence Quotient ("IQ") of 65, PageID 422, and an anxiety disorder that the ALJ found to be "severe" at Step Two, PageID 64 -- the ALJ reasonably concluded that Plaintiff did not meet the "deficits in adaptive functioning" prong in the introductory paragraph of Listing § 12.05. PageID 65. In so finding, as detailed above, the ALJ considered Plaintiff's testimony that he dropped out of school to raise his child (in addition to his academic difficulties, discussed in detail later in his decision, *see* PageID 68); his stable relationships with his mother, three children, and fiancé; and his ability to live alone and take care of his basic needs. PageID 65, 87. Importantly, also supporting the ALJ's conclusion is consultative examiner Dr. Harris' opinion that, although Plaintiff has "some limits to his cognitive functioning," he has "few limitations in his daily functioning, other than

allowing other people to meet some of his needs, such as cooking and laundry, which he likely could do himself if he had to." PageID 353.

Plaintiff also argues that the ALJ erred in considering his ability to perform basic activities of daily living in the Listing analysis. Doc. 9 at PageID 443; doc. 11 at PageID 467. Such contention is without merit. Although Plaintiff correctly notes that an individual's daily activities are not considered to be substantial gainful activity, *see* 20 C.F.R. § 404.1572(c), an ALJ is required to consider such evidence in analyzing the adaptive functioning prong of the introductory paragraph of Listing § 12.05. *See Hayes,* 357 F. App'x at 677; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1). Such analysis occurred here, PageID 65, and the Court finds the ALJ's analysis supported by substantial evidence.

Accordingly, although there is evidence upon which the ALJ could have relied to find that Plaintiff met or equaled Listing § 12.05(C) -- including his difficulties with reading and math, PageID 99-100; the fact that Plaintiff's mother has custody of his children (and the reasons supporting such custody), PageID 97, 102; and consultative examiner's Stephen Halmi, Psy.D.'s opinion, PageID 419-30 (discussed *infra*) -- substantial evidence supports the ALJ's ultimate conclusion at Step Three. *See Peterson,* 552 F. App'x at 539; *see also Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[e]ven if there is substantial evidence in the record that would have supported an opposite conclusion[,]" the Court must give deference to the ALJ's decision if it is supported by substantial evidence).

**B.     Medical Source Opinions**

Plaintiff next argues that the ALJ erred in weighing the opinions of consultative examiners Drs. Harris and Halmi. Doc. 9 at PageID 447. The regulations require that, unless the opinion of a treating source is entitled to controlling weight, an ALJ must "evaluate all medical

opinions according to [the 20 C.F.R. § 404.1527(c)] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999). The ALJ's explanation in this regard must be "meaningful." *Ott v. Comm'r of Soc. Sec.*, No. 1:08-CV-00399, 2009 WL 3199064, at *3 (S.D. Ohio Sept. 29, 2009). However, an ALJ need not give "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citation omitted).

Dr. Harris performed a psychological evaluation of Plaintiff on May 9, 2011, and diagnosed him with Borderline Intellectual Functioning ("BIF") and an Anxiety Disorder Not Otherwise Specified ("NOS"). PageID 350-54. After conducting a mental status exam and clinical interview, Dr. Harris assigned Plaintiff a Global Assessment of Functioning ("GAF")[3] score of 62 and concluded, *inter alia*, that, although limited by his BIF, Plaintiff is capable of carrying out instructions, responding appropriately to co-workers and supervisors, and responding appropriately to work pressures in a "relatively low pressured environment." PageID 353-54.

Shortly after the October 5, 2012 administrative hearing, Plaintiff was evaluated by Dr. Halmi on October 18, 2012. PageID 419-30. Dr. Halmi administered personality and

---

[3] GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin*, No. 3:13cv257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") (noting recommendations "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice"). As set forth in the DSM-IV, however, a GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34. A GAF score of 51-60 is indicative of "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* A GAF score of 61 to 70 indicates "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." *Id.*

intelligence testing, conducted a clinical interview, and reviewed records -- including Dr. Harris' opinion, school records, and treatment notes from Sri Alwis, M.D. *Id.* Dr. Halmi diagnosed Plaintiff with an Anxiety Disorder NOS, a Depressive Disorder NOS, and MMR; assigned a GAF of 50; and concluded, *inter alia*, that while Plaintiff is capable of understanding and carrying out one and two step instructions, he would have "significant difficulty" maintaining attention, concentration persistence and pace; "some problems" responding appropriately to supervision and co-workers; and "would struggle to manage unforeseen, novel problems." PageID 427-28. Dr. Halmi further concluded that Plaintiff's intellectual abilities and adaptive functioning meet the diagnostic description of MMR, such that he would satisfy the Listing § 12.05(C) criteria. *See* PageID 426.

The ALJ afforded "great weight" to Dr. Harris' opinion, and "little weight" to Dr. Halmi's opinion, although he incorporated several of Dr. Halmi's findings into Plaintiff's RFC. PageID 66, 69, 72. Plaintiff argues that the ALJ erred in granting greater weight to Dr. Harris' opinion that to Dr. Halmi's. Doc. 9 at PageID 447. The Court disagrees. The ALJ gave a meaningful explanation for his decision to accord Dr. Halmi's opinion little weight, as contemplated by the regulations. *See* PageID 71-72; *Ott*, 2009 WL 3199064, at *3. For example, the ALJ found Dr. Halmi's reliance on profiles of "similar people" when interpreting Plaintiff's Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") results to be problematic, and referenced to specific pieces of evidence in the record including Plaintiff's testimony and treatment notes from sessions with a social worker in 2012 that contradicted Dr. Halmi's findings. PageID 72.

Plaintiff argues that the ALJ erred in rejecting Dr. Halmi's opinion, including his GAF score of 50, because it was consistent with GAF scores in the 40's assigned by Plaintiff's

11

counselor and Dr. Alwis in 2012.  Doc. 9 at PageID 447.  However, the undersigned notes the ALJ explained that he found Dr. Harris' GAF score of 62 "consistent with the objective findings and [Plaintiff's] ability to function without mental health treatment."  PageID 69.  Nevertheless, as stated by the Sixth Circuit, no "statutory, regulatory, or other authority require[s] the ALJ to put stock in a GAF score in the first place."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (citation omitted).  Further, the Court notes that Dr. Halmi's opinion, as an examining psychologist, is not entitled to any special deference.  *Wesley v. Comm'r of Soc. Sec.*, No. 99-1226, 2000 WL 191664, at *6 (6th Cir. Feb. 11, 2000).

Ultimately, the ALJ chose to credit the findings of one mental health expert over another, after each examined Plaintiff on one occasion and conducted objective testing.  *See* PageID 350-54, 419-30.  Such a conclusion falls within the ALJ's "'zone of choice' within which he can act without the fear of court interference."  *Buxton*, 246 F.3d at 773.  Accordingly, Plaintiff's second assignment of error is overruled.

      **C.**     **Step Five Determination**

Finally, Plaintiff argues that the ALJ's Step Five determination -- that work is available in the national economy that Plaintiff can perform -- is unsupported by substantial evidence, because the ALJ inaccurately portrayed his impairments and limitations in the hypothetical question to the vocational expert ("VE").  Doc. 9 at PageID 450.

At Step Five, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal citation omitted).  "This kind of 'substantial evidence may be produced through reliance on the testimony of a [VE] in response to a 'hypothetical' question, but only if the question accurately portrays [Plaintiff's] individual

physical and mental impairments.'" *Id.* (internal citation omitted). In formulating the hypothetical, the ALJ needs to incorporate only those limitations that he or she accepts as credible. *See Casey v. Sec. of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

> The ALJ's hypothetical question to the VE was as follows:
>
> Assume an individual of the claimant's age, education, and past work. This individual has no exertional limitations at all. This individual can perform simple routine and repetitive tasks. The work environment should require occasional change, if any and only occasional decision making. But ideally this would be a static job with few, if any changes. I would say no fast paced production requirements. And I would say occasional interaction with others, none with the public. No work with large groups of people and no tandem work. And by that I mean where you require working in concert with others to accomplish a task.

PageID 106. Plaintiff argues that this hypothetical question was inaccurate because it portrayed an individual who could not perform "tandem work," while some evidence of record indicates that Plaintiff "has never been able to perform a job where he was <u>not</u> working in tandem with a family member or best friend."[4] Doc. 9 at PageID 450 (emphasis in original). In support of this argument, Plaintiff cites to his own testimony, and Dr. Halmi's statement that he has not been able to work without accommodations in the past, namely direct supervision. *Id.; see* PageID 427. The Commissioner argues that the ALJ reasonably found Plaintiff's allegations regarding the extent of his limitations not fully credible, and was, therefore, not required to adopt a "tandem work" requirement into the hypothetical question to the VE. *See* doc. 10 at PageID 461.

The undersigned finds merit to the Commissioner's argument. The ALJ determined that Plaintiff's impairments could "reasonably be expected to require his assignment to unskilled work with limited social and stress demands . . . [however,] the evidence of record . . . does not

---

[4] To the extent Plaintiff argues that the hypothetical question was also inaccurate because "it is not clear how [he] could sustain work as a laundry worker considering that he is not even able to do his own laundry[,]" doc. 9 at PageID 450, the Court notes that the ALJ specifically found that Plaintiff "did not *need* extensive daily supports[,]" PageID 69 (emphasis in original), and found his allegations to the contrary not credible. PageID 67. The Court finds the ALJ's analysis in this regard supported by substantial evidence.

fully support his recent statements with regard to the frequency, intensity and limiting effects of his symptoms." PageID 67.  Notably, Plaintiff has not challenged the ALJ's credibility findings, *see* doc. 9, and the ALJ is only required to incorporate limitations that he accepts as credible. *See Casey*, 987 F.2d at 1235.  Although Dr. Halmi stated that Plaintiff has required work accommodations in the past, PageID 427, such statement is based on Plaintiff's self-reporting, PageID 421-22, which, again, the ALJ found not fully credible.  PageID 67.  The ALJ's hypothetical question to the VE properly incorporated Dr. Harris' opinion regarding Plaintiff's functional limitations, which contained several restrictions related to Plaintiff's limited cognitive functioning and anxiety, PageID 106, but did not include a need for special accommodations, such as working in tandem.  PageID 350-54.

Accordingly, the Court finds the ALJ's Step Five determination supported by substantial evidence, and overrules Plaintiff's final assignment of error.

## IV.

For the foregoing reasons, the Court finds Plaintiff's assignments of error unmeritorious, and further finds the ALJ's non-disability determination supported by substantial evidence. Accordingly: (1) the Commissioner's non-disability finding is **AFFIRMED**; and (2) this case is **CLOSED** on the Court's docket.

**IT IS SO ORDERED**.


Date:   September 29, 2015                     *s/ Michael J. Newman*
                                               Michael J. Newman
                                               United States Magistrate Judge